**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

APRIL SESSIONS,

       Plaintiff,

v.                                    20-cv-606 MV/KRS

STATE OF NEW MEXICO,
ADMINSTRATIVE OFFICE OF THE COURTS ("NMAOC"),
ARTHUR PEPIN, individually and as Director of NMAOC,
And YET-TO-BE-IDENTIFIED CO-CONSPIRATORS,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendants' Motion and Memorandum in Support of Defendants' Partial Motion for Judgment on the Pleadings [Doc. 10].   The Court, having considered the Motion and relevant law, finds that the Motion is well-taken and will be granted, as set forth herein.

**BACKGROUND**

On June 23, 2020, Plaintiff April Sessions commenced the instant action by filing her Complaint in this Court.   Doc. 1.   In the Complaint, Ms. Sessions alleges as follows.   Ms. Sessions was formerly employed by the State of New Mexico Administrative Office of the Courts ("NMAOC") as Program Manager for the Municipal Court Automation Program and the Municipal Court Automation Fund.   *Id.* ¶ 3.   During her employment, she generated cost data regarding Senate Bill 173, an initiative that would allow municipalities to close their municipal courts.   *Id.* ¶ 6-10.   At a meeting on February 13, 2019, Arthur Pepin, Director of NMAOC,

1

instructed her to conceal that cost data from the legislature and the public.   *Id.* ¶ 13.   Ms. Sessions pointed out that his instruction was improper and illegal; thereafter, Mr. Pepin "illegally retaliated and discriminated against her for blowing the whistle on him."   *Id.* ¶ 16.   Mr. Pepin "thought that Ms. Sessions would be compliant with his illegal scheme" and that "he could manipulate her into submission because of her age and gender," but when she "refused to comply with Pepin's attempts to pressure her," he "targeted her for illegal discrimination and retaliation, and he attempted to silence her by generating false pretexts" to justify her termination.   *Id.* ¶ 18. Mr. Pepin delivered a proposed termination letter to Ms. Sessions on July 8, 2019, and "then terminated" her.   *Id.* ¶¶ 20, 21, 23.

Ms. Sessions filed charges of Discrimination with the New Mexico Human Rights Bureau and with the United States Equal Opportunity Commission and received "right to sue" authorizations from each.   *Id.* ¶¶ 25-27.

Thereafter, Ms. Sessions commenced the instant action, naming as defendants the State of New Mexico (the "State"), NMAOC, Mr. Pepin in his individual and official capacity, and "yet-to-be-identified co-conspirators."   In the Complaint, Ms. Sessions brings claims under Title VII, 42 U.S.C. § 1983, and the New Mexico Human Rights Act ("NMHRA") for gender discrimination, age discrimination, and retaliation, claims under the Age Discrimination in Employment Act ("ADEA"), claims under the New Mexico Whistleblower Protection Act ("NMWPA"), a breach of contract claim, a breach of the implied covenant of good faith and fair dealing claim, an intentional interference with contract claim, an intentional infliction of emotional distress claim, and a negligent training and supervision claim.

Defendants have now moved for partial judgment on the pleadings, and Plaintiff has responded in opposition (in large part).   *See* Doc. 10, Doc. 17.   Defendants' Motion is currently before the Court.

## STANDARD

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12.   Generally, "[t]he standard of review for a motion for judgment on the pleadings is the same standard applied in considering a motion to dismiss under Rule 12(b)(6)." *Rigler v. Lampert*, 248 F. Supp. 3d 1224, 1231 (D. Wyo. 2017) (citing *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1118 (10th Cir. 2005); *Fleming v. Coulter*, 573 F. App'x 765, 768 (10th Cir. 2014); *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013)).   Here, however, Defendants also invoke the question of this Court's subject matter jurisdiction; to the extent, then, that their Motion "challenges the Court's subject matter jurisdiction," it will be "resolved under Rule 12(b)(1)'s standard."   *Swepi, LP v. Mora Cty., N.M.*, 81 F. Supp. 3d 1075, 1146 (D.N.M. 2015).

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss.   *Id.*   First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.*   Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.   "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."   *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible").   Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."   *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

4

*Id.* at 679.

Under Rule 12(b)(1), a "motion to dismiss may take one of two forms—a facial attack or a factual attack. *Schmitz v. Colorado State Patrol*, 841 F. App'x 45, 54 (10th Cir. 2020) (citation omitted).   Here, Defendants indicate that they are making a facial attack, which "considers only the factual allegations in the complaint." *Id.* (citation omitted).   When considering a facial attack, the court "must accept the allegations in the complaint as true." *Id.* The Court's determination "thus mirrors how [it] assess[es] Rule 12(b)(6) motions," as set forth above. *Id.*

## DISCUSSION

On their instant Motion, Defendants argue that portions of each count of the Complaint should be dismissed as to some or all of them, for various reasons.   The Court addresses each argument in turn.

I.     Dismissal of the State as a Defendant

Defendants argue that the State should be dismissed from this action, as only "the executive agency that is alleged to have caused the harm" may properly be named as a defendant.   Doc. 10 at 5.   In support of this argument, Defendants cite to *Begay v. State*, in which the court explained that, under the New Mexico Tort Claims Act ("NMTCA"), "the particular agency that caused the harm is the party that must be named in the complaint."   723 P.2d 252, 256 (N.M. Ct. App. 1985).   Based on this premise, the *Begay* court held that the State was not the proper party-defendant on the counts of the complaint that alleged tort claims because there was "no claim that the State of New Mexico did anything wrong or ha[d] any responsibility for the alleged harm suffered by plaintiffs," as set forth in those counts.   *Id.* Thus, for purposes of tort claims brought pursuant to the NMTCA, *Begay* does not allow a claim

to be brought against the State in the absence of allegations that the State, itself, engaged in wrongdoing.

But nothing in *Begay* suggests that its holding extends to any claims other than tort claims, or to any context other than the NMTCA.    Indeed, in *Begay*, the court did not extend its holding to the plaintiffs' federal constitutional claims brought pursuant to § 1983, which it analyzed separately under the specific requirements of § 1983.    *Id.* at 257; *see also Muller v. Vilsack,* No. 13-CV-431 MCA-KK, 2016 WL 9777485, at *5 (D.N.M. Sept. 29, 2016), *aff'd sub nom. Muller v. Perdue*, 744 F. App'x 555 (10th Cir. 2018) (finding no basis on which to construe the NMCTA as nullifying the NMHRA's waiver of the State's sovereign immunity); *Luboyeski v. Hill*, 872 P.3d 353 (N.M. 1994) (holding "that sovereign immunity has been waived by the Human Rights Act to the extent needed to permit recovery under the Act against the state and its political subdivisions").

Accordingly, the Court agrees with Defendants that under *Begay*, the State must be dismissed from those counts of Ms. Session's Complaint that allege tort claims under the NMTCA, as those counts allege wrongdoing by Mr. Pepin and NMAOC, rather than by the State.    Those claims are found in Counts VIII (intentional interference with employment contract), Count IX (intentional infliction of emotional distress), and Count X (negligent training and supervision).    The Court does not equally agree that *Begay* provides a basis for dismissal of the State from any other count in the Complaint.

II.    Title VII Claims

In Count I, Ms. Sessions asserts, *inter alia*, that Mr. Pepin's treatment of her constitutes both gender discrimination and illegal retaliation in violation of Title VII.    Doc. 1 ¶ 29.    As an initial matter, because Ms. Sessions indicates that she brings these claims against "All

6

Defendants," it is unclear from the face of the Complaint whether she intends to assert these claims against Mr. Pepin in both his individual and his official capacity.    *Id.*    In her Response, however, Ms. Sessions clarifies that she intends to bring her Title VII claims against Mr. Pepin only in his official capacity.    Doc. 17 at 8.    The Tenth Circuit "has repeatedly held that personal capacity suits against individual supervisors are inappropriate under Title VII, which is directed, rather, to the plaintiff's employer."    *Lewis v. Four B Corp.*, 211 F. App'x 663, 665 (10th Cir. 2005) (citation omitted).    Accordingly, "[u]nder Title VII, suits against individuals must proceed in their official capacity."    *Sauers v. Salt Lake Cty.,* 1 F.3d 1122, 1125 (10th Cir. 1993).    Thus, Ms. Sessions' claims against Mr. Pepin may proceed against him only in his official capacity.

Next, to the extent that, in connection with her Title VII claims, Ms. Sessions intends to pursue punitive damages from the State of New Mexico, the NMAOC, and Mr. Pepin in his official capacity, such damages are not permitted.    "Title VII explicitly prohibits recovery of punitive damages from the government."    *Yomi v. Becerra*, No. 21-2224-DDC-JPO, 2022 WL 608002, at *5 (D. Kan. Mar. 1, 2022), *reconsideration denied*, No. 21-2224-DDC-ADM, 2022 WL 1102657 (D. Kan. Apr. 13, 2022); *see also Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1146 (D.N.M. 2011) (dismissing claims against the University of New Mexico under Title VII for punitive damages because "[p]unitive damages are not permitted in suits against a government, government agency, or political subdivision under 42 U.S.C. § 1981a").    Accordingly, Ms. Sessions may not pursue punitive damages in connection with her Title VII claims.

Finally, Ms. Sessions has failed to allege facts that, if proven, would establish that she was subjected to retaliation in violation of Title VII.    To state a prima facie case of retaliation, Ms. Sessions "must show: (1) that she engaged in protected opposition to discrimination, (2) that

7

a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013).   "The first prerequisite of any retaliation claim is the plaintiff-employee's *protected opposition to unlawful discrimination,* prompting the employer's retaliatory conduct." *Curry v. Mazzio's Corp.*, 72 F. App'x 759, 762 (10th Cir. 2003) (emphasis in original).   In other words, an employer is prohibited from retaliating against an employee for the very reason that she "has opposed any practice made an unlawful employment practice by Title VII." *Cash v. Lockheed Martin Corp.,* No. 15-cv-506, 2016 WL 8919403, at *10-11.   Significantly, "generalized employment complaints do not amount to protected opposition to discrimination." *Hankishiyev v. ARUP Lab'ys*, 732 F. App'x 673, 676 (10th Cir. 2018) (citation omitted).   Thus, in the absence of allegations that the plaintiff, in the first instance, "lodged complaints concerning activities prohibited by Title VII," the plaintiff necessarily "cannot satisfy a prima facie case of Title VII retaliation." *Cash,* 2016 WL 8919403, at *11; *see also Hankishiyev*, 732 F. App'x at 676 ("Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII].").

In her Complaint, Ms. Sessions asserts in conclusory fashion that Mr. Pepin "illegally retaliated against her, forcing her into premature retirement because of her expressed opposition to Defendants' illegal discrimination and other illegal misconduct."   Doc. 1 ¶ 30.   But none of the allegations in the Complaint demonstrates that, prior to Mr. Pepin's delivery of a proposed termination letter to her on July 8, 2019, Ms. Sessions "expressed opposition" to any discriminatory practice prohibited by Title VII.   Ms. Sessions argues that her refusal to engage in the "illegal conduct demanded by Mr. Pepin," namely, his directive that she conceal cost data

regarding Senate Bill 173 from the legislature and the public, "should be considered 'protected activity.'"   Doc. 17 at 7.   But there is no indication in the Complaint (or elsewhere) that Mr. Pepin's directive constitutes a "practice made an unlawful employment practice by Title VII." *Cash*, 2016 WL 8919403, at *10-11.   It follows that, in refusing to follow Mr. Pepin's directive, Ms. Sessions did not engage in protected opposition to unlawful discrimination.

Indeed, there is no indication from the Complaint (or elsewhere) that Ms. Sessions conveyed to Mr. Pepin any concern that, by directing her to conceal her data, he had engaged in a practice made unlawful by Title VII.   To the extent that Ms. Sessions' refusal to comply with Mr. Pepin's directive can be considered a "tacit complaint lodged by an older woman," Doc. 17 at 7, that complaint still falls into the category of a "generalized employment complaint," rather than a complaint concerning activities prohibited by Title VII.   *Hankishiyev*, 732 F. App'x at 676.   And in the absence of allegations that Ms. Sessions, in the first instance, "lodged complaints concerning activities prohibited by Title VII," she necessarily "cannot satisfy a prima facie case of Title VII retaliation."   *Cash*, 2016 WL 8919403, at *11.   Accordingly, Ms. Sessions has failed to state a Title VII retaliation claim upon which relief can be granted, and that claim must be dismissed.

In summary, Ms. Sessions may proceed with her Title VII claim of gender discrimination, as set forth in Count I, as to the State, NMAOC, and Mr. Pepin in his official capacity only.   She may not proceed with her Title VII claim of illegal retaliation, nor may she pursue punitive damages in connection with her Title VII claim.

II.   Section 1981a Claims

In Counts I and III, Ms. Sessions appears to assert that Mr. Pepin's conduct constitutes, *inter alia*, discrimination and retaliation in violation of 42 U.S.C. § 1981a.   Doc. 1 ¶¶ 31, 43.

Section 1981a, however, does not "create an additional, separate and independent cause of action for employment discrimination plaintiffs, but merely adds to the damages available to such plaintiffs under Title VII." *West v. Boeing Co.*, 851 F. Supp. 395 (1994). Ms. Sessions concedes this point. Doc. 17 at 8-9. Because § 1981a provides the basis for a *remedy* rather than for a cause of action, Ms. Session cannot bring a separate claim under § 1981a. Accordingly, Ms. Sessions' § 1981a claim, set forth in Counts I and III, must be dismissed for failure to state a claim.

III.   Section 1983 Claims

In Counts I and III, Ms. Sessions asserts, *inter alia*, claims under § 1983 against "All Defendants." Doc. 1 ¶¶ 28-33, 40-44. In connection with her § 1983 claims, Ms. Sessions argues that Mr. Pepin's conduct violated her federal constitutional rights to be free from discrimination based on gender, discrimination based on age, and retaliation. *Id.*

First, Defendants invoke the Eleventh Amendment, arguing that sovereign immunity bars Ms. Sessions' § 1983 claims against the State, NMAOC, and Mr. Pepin in his official capacity. Doc. 10 at 10. The Eleventh Amendment "bars a suit for damages against a state unless Congress abrogates the state's sovereign immunity or the state consents to suit." *Schrader v. New Mexico*, 361 F. App'x 971, 974 (10th Cir. 2010). "In enacting § 1983, Congress did not abrogate New Mexico's sovereign immunity," and the State has not consented to the instant suit. *Id.* "Because the defense of sovereign immunity is jurisdictional in nature," this Court lacks subject matter jurisdiction over Ms. Sessions' § 1983 claims against the State. *Id.* "The same analysis applies to bar [Ms. Sessions] § 1983 claims against the State of New Mexico Administrative Office of the Courts and [Mr. Pepin] in his official capacity." *Schrader v. Richardson*, 461 F. App'x 657, 660 (10th Cir. 2012); *see also Williams v. Utah Dep't of Corr.*,

928 F.3d 1209, 1212 (10th Cir. 2019) (Eleventh Amendment "immunity extends to arms of the state and to state officials who are sued for damages in their official capacity").    Because the Eleventh Amendment bars Ms. Sessions' § 1983 claims against the State, NMAOC, and Mr. Pepin in his official capacity, those claims must be dismissed for lack of jurisdiction.

Next, Defendants argue that Ms. Sessions may not pursue a § 1983 claim based on an alleged violation of her right to be free from discrimination based on age.    Doc. 10 at 11-12. "Section 1983 cannot be used to vindicate a violation of federal law where Congress has otherwise created a comprehensive enforcement scheme that is incompatible with individual § 1983 enforcement."    *Patterson v. Rural Water Dist. 2*, 438 F. Supp. 3d 1258, 1277 (W.D. Okla. 2020) (citing *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).    The Tenth Circuit has specifically held that "age discrimination claims brought under § 1983," like the one that Ms. Sessions brings here, "are preempted by the ADEA."    *Id.* (citing *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir. 1998), *judgment vacated on other grounds*, 528 U.S. 1110, (2000); *Migneault v. Peck*, 204 F.3d 1003, 1004 n.1 (10th Cir. 2000) (reaffirming, on remand, its holding that the equal protection clause does not give rise to a cognizable claim of age discrimination)). Accordingly, Ms. Sessions' § 1983 claim, to the extent that it alleges age discrimination, is preempted by the ADEA and thus subject to dismissal.

In summary, Ms. Sessions may not pursue her § 1983 claims, against any Defendant, to the extent that those claims are based on the alleged violation of her constitutional right to be free from discrimination based on age.    Ms. Sessions may pursue the remainder of her § 1983 claims as set forth in Counts I and III, namely those based on the alleged violation of her constitutional rights to be free from discrimination based on gender and to be free from retaliation, only against Mr. Pepin in his individual capacity.

IV.    <u>NMHRA Claim</u>

In Count II, Ms. Sessions asserts that Mr. Pepin's treatment of her constitutes gender and age discrimination and illegal retaliation in violation of the NMHRA.   Doc. 1 ¶¶ 35-39.   For the same reasons set forth above in the discussion of Ms. Sessions' Title VII claims, Ms. Sessions has failed to allege facts that, if proven, would establish that she was subjected to retaliation in violation of the NMHRA.

"The NMHRA makes it unlawful for any person or employer to retaliate against 'any person who has opposed any unlawful discriminatory practice.'"   *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 72, (N.M. 2004) (quoting N.M. Stat. Ann. §28–1–7(I)(2)).   The New Mexico Supreme Court has explained that it "look[s] at federal civil rights adjudication for guidance in interpreting the NMHRA."   *Id.*   As noted above, and as recognized by the *Ocana* court, to state a retaliation claim, a plaintiff must allege "opposition" to "an allegedly unlawful employment practice."   *Id.*

Also as noted above, none of the allegations in the Complaint demonstrates that, prior to Mr. Pepin's delivery of a proposed termination letter to her on July 8, 2019, Ms. Sessions "expressed opposition" to any discriminatory practice prohibited by the NMHRA.   Ms. Sessions argues that her refusal to engage in the "illegal conduct demanded by Mr. Pepin," namely, his directive that she conceal cost data regarding Senate Bill 173 from the legislature and the public, "should be considered 'protected activity.'"   Doc. 17 at 7.   But there is no indication in the Complaint (or elsewhere) that Mr. Pepin's directive constitutes a "practice made an unlawful employment practice by [the NMHRA]."   *Cash*, 2016 WL 8919403, at *10-11.   It follows that, in refusing to follow Mr. Pepin's directive, Ms. Sessions did not engage in protected opposition to unlawful discrimination.

Indeed, there is no indication from the Complaint (or elsewhere) that Ms. Sessions conveyed to Mr. Pepin any concern that, by directing her to conceal her data, he had engaged in a practice made unlawful by NMHRA.   To the extent that Ms. Sessions' refusal to comply with Mr. Pepin's directive can be considered a "tacit complaint lodged by an older woman," Doc. 17 at 7, that complaint still falls into the category of a "generalized employment complaint," rather than a complaint concerning activities prohibited by the NMHRA.   *Hankishiyev*, 732 F. App'x at 676.   And in the absence of allegations that Ms. Sessions, in the first instance, "lodged complaints concerning activities prohibited by [the NMHRA]," she necessarily "cannot satisfy a prima facie case of [NMHRA] retaliation."   *Cash*, 2016 WL 8919403, at *11.   Accordingly, Ms. Sessions has failed to state an NMHRA retaliation claim upon which relief can be granted, and that claim must be dismissed.

As a result, Ms. Sessions may not pursue her NMHRA retaliation claim against any Defendant.   She may pursue, against all Defendants, her NMHRA claims set forth in Count II, to the extent that they are based on age and gender discrimination.

V.      ADEA Claim

In Count IV, Ms. Sessions asserts a claim of age discrimination in violation of the ADEA against "All Defendants."   Doc. 1 ¶¶ 45-48.   Defendants invoke the Eleventh Amendment, arguing that sovereign immunity bars Ms. Sessions' ADEA claim as against the State, NMAOC, and Mr. Pepin in his official capacity.   Doc. 10 at 10-11.   As noted above, the Eleventh Amendment "bars a suit for damages against a state unless Congress abrogates the state's sovereign immunity or the state consents to suit."   *Schrader*, 361 F. App'x at 974.   This "immunity extends to arms of the state and to state officials who are sued for damages in their official capacity."   *Williams*, 928 F.3d at 1212. The Supreme Court has specifically held that

13

while "the ADEA does contain a clear statement of Congress' intent to abrogate the States' immunity, . . . the abrogation exceeded Congress's authority under § 5 of the Fourteenth Amendment." *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000).   Under *Kimel*, a plaintiff "cannot maintain [an ADEA] suit against . . . a state employer." *Migneault*, 204 F.3d at 1004.   Accordingly, the Eleventh Amendment bars Ms. Sessions' ADEA claims against the State, NMAOC, and Mr. Pepin in his official capacity, and those claims must be dismissed for lack of jurisdiction.

Next, Defendants argue, and Ms. Sessions appears to concede, that Ms. Sessions cannot sue Mr. Pepin in his individual capacity for violations of ADEA.   Doc. 10 at 12-12; Doc. 17 at 14.   "The Tenth Circuit repeatedly has held, consistent with the majority position, that supervisors do not fall within the ADEA's definition of 'employer' and therefore are not liable under the Act." *Jones v. Hyatt Corp.,* No. 12-civ-1301, 2014 WL 12782783, at *41 (D.N.M. Dec. 12, 2014) (citing *Butler v. City of Prairie Village*, 172 F.3d 736, 743 (10th Cir. 1991) (recognizing that Title VII, the Americans with Disabilities Act of 1990, and the ADEA all prohibit employer discrimination and do not authorize personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definitions) (internal quotation marks and citations omitted); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996) (holding that the court would, consistent with the "majority view," "continue to adhere to this [its] established ... rule that personal capacity suits against individual supervisors are inappropriate under Title VII")).   Based upon this precedent, Ms. Sessions' ADEA claims against Mr. Pepin in his individual capacity do not fall within the ADEA's definition of "employer," and thus must be dismissed.

Accordingly, Ms. Sessions may not properly pursue her ADEA claims against the State,

NMAOC, or Mr. Pepin in his official capacity or in his individual capacity.   Her ADEA claims, set forth in Count IV, thus must be dismissed in their entirety.

VI.   NMWPA Claim

In Count V, Ms. Sessions asserts a claim under the NMWPA against "All Defendants." Doc. 1 ¶¶ 49-55.   The NMPA prohibits a public employer from retaliating against an employee because she (1) "communicate[d] ... information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act"; (2) "provide[d] information to, or testifie[d] before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act"; or (3) "object[ed] to or refuse[d] to participate in an activity, policy or practice that constitutes an unlawful or improper act."   *Burke v. New Mexico*, 696 F. App'x 325, 335 (10th Cir. 2017) (quoting N.M. Stat. Ann. § 10-16C-3).   As Ms. Sessions appears to concede, *see* Doc. 17 at 15, while an officer of an agency or branch of state government may be named as a defendant in a NMWPA action *in his official capacity*, "the WPA does not create a right of action against a current or former state officer *in his or her personal capacity*." *Id.* (quoting *Flores v. Herrera*, 384 P.3d 1070, 1073 (N.M. 2016) (emphasis added)).

Accordingly, Ms. Sessions' NMWPA claim must be dismissed as against Mr. Pepin in his individual capacity.   Her NMWPA claim, set forth in Count V, may proceed against the State, NMAOC, and Mr. Pepin in his official capacity.

VII.   Claims for Breach of Contract and Breach of Implied Covenant of Good Faith

In Counts VI and VII respectively, Ms. Sessions asserts against "Defendant State of New Mexico, dba NMAOC," a claim for breach of contract and a claim for breach of the implied covenant of good faith and fair dealing.   Doc. 1 ¶¶56-57; 58-60.   In support of these claims,

Ms. Sessions alleges in conclusory fashion that, because of Mr. Pepin's conduct toward her, these Defendants, "by and through the other named and unnamed complicit Defendants . . . breached the Plaintiff's contract of employment with the State of New Mexico in bad faith" and "violated th[e] covenant of good faith and fair dealing."   Doc. 1 ¶¶ 57, 60.   Defendants argue that, because Ms. Sessions fails to allege the existence of any contract between her and Defendants, she fails to state a breach of contract claim and that, because a properly pleaded breach of contract claim is a prerequisite for a claim for breach of the implied covenant of good faith and fair dealing, that claim also must be dismissed.   Doc. 10 at 13-15.

Under New Mexico statute, "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."   N.M. Stat. Ann § 37-1-23(A).   In the employment context, "the limited waiver of immunity for suits based on written contract extends to an implied employment contract based on a written personnel policy" or "other writing[], such as employee handbooks and personnel manuals," so long as "the writing controls the employer-employee relationship such that an employee could reasonably expect his or her employer to conform to its provisions."   *Been v. New Mexico Dep't of Info. Tech.*, No. 09-civ-726, 2011 WL 13269420 (D.N.M. Mar. 29, 2011).   Notably, an implied contract, "without a supportive writing memorializing its terms," may [not] be deemed a 'valid written contract' for purposes of defeating immunity."   *Quarrie v. Board of Regents of N.M. Inst. of Mining & Tech.*, No. A-1-CA-37163, 2020 WL 3440519, at *5 (N.M. Ct. App. June 17, 2020). Section 37-1-23(A) "is not a mere defense to liability but instead an entire bar to suit, relieving the defendant from the burden of defending a trial on the merits."   *Id.* at *2.

Here, Ms. Sessions' "claim for breach of contract does not assert the existence of a writing memorializing a contract between the parties."   *Id.*   Nor does Ms. Sessions "plead the

existence of an implied-in-fact contract supported in writing," as would be necessary to establish the existence of a "'valid written contract' under the statute."   *Id.* at *4.   In her response, Ms. Sessions attempts to clarify that, in alleging that Defendants breached her "contract of employment," she was "referring to all policies, procedures, personnel rules, and promises, both express and implied, that inform and/or constitute Defendants' employment obligations to Plaintiff."   Doc. 17 at 15.   Also in her response, Ms. Sessions requests that, "if this Court determines that [she] needs to be more specific," the Court grant her "leave to amend the Complaint accordingly."   *Id.*

As an initial matter, referring to policies in a response brief is neither the equivalent of, nor a viable substitute for, adequately pleading the existence of a valid contract.   Nor is Ms. Sessions' "one-sentence request" for leave to amend her Complaint appropriate.   *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1282 (10th Cir. 2021).   By failing to file a motion for leave to amend and failing to attach a proposed amended complaint to such motion, Ms. Sessions has failed to comply with either Rule 15 of the Federal Rules of Civil Procedure or District of New Mexico Local Rule 15.1.   *See id.*   The Tenth Circuit has "long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court." *Id.* at 1283.   "Such shots in the dark do not request an order contemplated under the rules, do not state any particular grounds for the request, and lack basis."   *Id.* (citation omitted). Ms. Sessions' "single sentence" thus is not "a cognizable motion," and the Court exercises its discretion to deny her request.   *Id.*

Indeed, even if the Court were to allow Ms. Sessions to amend her Complaint to indicate that Defendants breached "all policies, procedures, personnel rules, and promises, both express and implied, that inform and/or constitute Defendants' employment obligations to Plaintiff," this

allegation would remain insufficient to state a breach of contract claim.    To defeat immunity, Ms. Sessions is required to allege the existence of either an actual contract or an implied-in-fact contract supported by a writing that controlled her employer-employee relationship such that she could reasonably expect her employer to conform to its provisions.    Asserting the general existence of policies, procedures, rules, and promises – without identifying any of them – and concluding – with no factual basis for how or why –these unidentified items somehow informed or constituted Defendants' obligations, falls far short of adequately alleging that a particular writing governed her employment relationship.    And in the absence of allegations identifying such a writing, Ms. Sessions would not be able to defeat immunity.    Thus, even as amended, her breach of contract claim would remain subject to dismissal.    Accordingly, the Court will dismiss Ms. Sessions' breach of contract claim without leave to amend.

In the absence of a viable breach of contract claim, Ms. Sessions may not proceed on her claim for breach of the covenant of good faith and fair dealing.    "Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *WXI/Z Sw. Malls v. Mueller,* 110 P.3d 1080, 1087 (N.M. Ct. App. 2005).    A cause of action for breach of an implied covenant of good faith and fair dealing cannot prevail without an accompanying showing for breach of a contract.    *Aguilar v. Las Cumbres Learning, Inc.,* No. 06-civ-1100, 2008 WL 4107137, at *18 (D.N.M. Apr. 26, 2008).    Accordingly, because the Court is dismissing Ms. Sessions' breach of contract claim, it must also dismiss her claim for breach of the covenant of good faith and fair dealing.

VIII.    Claims for Infliction of Distress, Contract Interference, and Negligent Training

The Complaint asserts the following tort claims pursuant to the NMTCA:    (1) intentional interference with employment contract by Mr. Pepin (Count VIII); (2) intentional

infliction of emotional distress/outrageous misconduct by the State and Mr. Pepin (Count IX);

and negligent training and supervision by all Defendants (Count X).[1]    "Under the Tort Claims

Act, governmental entities and any public employees that are acting within the scope of duty are

immune from liability for any tort except as waived under NMSA 1978, Section 41–4–4(A)."

*Billy v. Curry Cty. Bd. of Cty. Comm'rs*, No. 13-civ-32, 2014 WL 11430973, at *7 (D.N.M. Sept.

30, 2014); *see also* N.M. Stat. Ann. § 41-4-4 ("A governmental entity and any public employee

while acting within the scope of duty are granted immunity from liability for any tort except as

waived by . . . Sections 41-4-5 through 41-4-12 NMSA 1978.").    Accordingly, "[a] plaintiff

may not sue a New Mexico governmental entity or its employees or agents unless the plaintiff's

cause of action fits within one of the exceptions that the NMTCA grants for governmental

entities and public employees."    *Hinds v. Barela*, No. 20-civ-1011, 2022 WL 1565268, at *5

(D.N.M. May 18, 2022), *report and recommendation adopted*, No. 20-cv-1011, 2022 WL

2355452 (D.N.M. June 30, 2022) (citing *Begay*, 723 P.2d at 256 ("Consent to be sued may not

be implied, but must come within one of the exceptions to immunity under the Tort Claims

Act.").

      As Defendants argue, none of the tort claims asserted by Ms. Sessions comes within any

of the exceptions to immunity under the NMTCA.    First, "although New Mexico recognizes a

cause of action for the intentional interference of contractual relations," the NMTCA "does not

provide a waiver of immunity for this claim."    *Billy v. Curry Cty. Bd. of Cty. Comm'rs*, No. 13-

civ-32, 2014 WL 11430973, at *9 (D.N.M. Sept. 30, 2014).    Next, "Intentional Infliction of

Emotional Distress is not one of the enumerated torts in the NMSA for which immunity is

---

[1] The Court determined above that the State must be dismissed from these counts of the
Complaint under *Begay*.

waived." *Tello v. Honigman*, No. 21-civ-724, 2021 WL 5003312, at *4 (D.N.M. Oct. 28,

2021).   Finally, "New Mexico law only waives immunity for negligent hiring, training,

retention, and supervision when the negligent training and supervision *by a law enforcement*

*officer* causes a subordinate officer to commit an enumerated tort.   *Ray v. New Mexico State*

*Police*, No. 12-civ-127, 2021 WL 1169710, at *10 (D.N.M. Mar. 26, 2021) (citing *McDermitt v.*

*Corr. Corp. of America*, 814 P.2d 115, 117 (N.M. Ct. App. 1991) (emphasis added)).   Here,

none of the Defendants is a law enforcement officer; it follows that the Complaint is devoid of

allegations that the negligent training and supervision by any law enforcement officer caused a

subordinate officer to commit an enumerated tort.   Accordingly, the NMTCA does not provide

a waiver of immunity for Ms. Sessions' negligent training and supervision claim.

Because the NMCTA thus does not waive immunity for any of the tort claims asserted by

Ms. Sessions, Defendants are immune from liability on those claims.   Ms. Sessions' claims for

intentional interference with employment contract, intentional infliction of emotional

distress/outrageous misconduct, and negligent training and supervision, as set forth in Counts

VIII, IX, and X respectively, thus must be dismissed.

## CONCLUSION

For the foregoing reasons, the following claims asserted by Ms. Sessions in the

Complaint are dismissed from this action:   Title VII claims as against Mr. Pepin individually

(Count I); punitive damages claims (Count I); Title VII retaliation claim (Count I); § 1981a

claim (Counts I and III); § 1983 claims as against the State, NMAOC, and Mr. Pepin in his

official capacity (Counts I and III); § 1983 claim as against Mr. Pepin individually to the extent

that it alleges age discrimination (Count III); NMHRA claim to the extent that it alleges

retaliation (Count II); ADEA claims (Count IV); NMWPA claim as against Mr. Pepin in his

individual capacity (Count V); breach of contract claim (Count VI); claim for breach of the covenant and good faith and fair dealing (Count VII); claim for intentional interference with employment contract (Count VIII); claim for intentional infliction of emotional distress (Count IX); and claim for negligent training and supervision (Count X).

Ms. Sessions may proceed with the following claims: Title VII claim of gender discrimination as against the State, NMAOC, and Mr. Pepin in his official capacity (Count I); § 1983 claims based on the alleged violation of her constitutional rights to be free from discrimination based on gender and to be free from retaliation as against Mr. Pepin in his individual capacity (Counts I and III); NMRHA claims based on age and gender discrimination as against all Defendants (Count II); and NMWPA claim as against the State, NMAOC, and Mr. Pepin in his official capacity (Count V).

**IT IS THEREFORE ORDERED** that Defendants' Motion and Memorandum in Support of Defendants' Partial Motion for Judgment on the Pleadings [Doc. 10] is GRANTED consistent with this Memorandum Opinion and Order.

DATED this 26th day of October 2022.

MARTHA VAZQUEZ
Senior United States District Judge